Timothy Gens
ChemAcoustic Technologies, Inc.
774 Mays Blvd. Suite 10-506
Incline Village, NV 89451
Telephone: (650) 949-4880
Facsimile:  (650) 949-4889

In Pro Per



FILED
2015 NOV 17 P 2: 38
SUSAN Y. SOONG
CLERK, US DISTRICT COURT
NO. DIST. OF CA.

UNITED STATES COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TIMOTHY GENS d/b/a
CHEMACOUSTIC TECHNOLOGIES,
INC.

               Plaintiff,

Vs.

AMERIMADE TECHNOLOGY INC.,
UPTIME SEMICONDUCTOR
EQUIPMENT SERVICE INC., AND
TODD THOMAS

               Defendants

CASE NO.   CV15 01425 JCS

**MEMORANDUM IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT BY COURT**

Date of Hearing: November 20, 2015

Time of Hearing: 9:30 A.M.

Courtroom:  G – 15th Floor

    Please take note that on November 20, 2015 before the U.S. Court, Northern District of California, San Francisco Division located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Timothy Gens d/b/a ChemAcoustic Technologies in the above-entitled action will request that the Court enter default judgment in the matter against Defendant Amerimade Technology, Inc. (hereinafter "Amerimade"), Defendant Uptime Semiconductor Equipment Service Inc. (hereinafter "Uptime"), and Defendant Todd Thomas (hereinafter "Thomas"), on the grounds that said defendants have failed to appear or otherwise respond to the amended complaint within the time prescribed by the Federal Rules of Civil Procedure.

At the time and place of the hearing, Plaintiff will present proof of the following matters:

1. Defendant Thomas is a male individual over the age of 55 and is a competent person who is not in military service or otherwise exempted under the Soldier's and Sailor's Civil Relief Act of 1940.

2. Defendants have not appeared in this action and a Default By Clerk was entered on April 23, 2015. As noted in the Request for Default By Clerk, Summons, and its supporting Declaration on record, Defendants were served personally at the residence of Defendant Thomas located at 3100 Finley Road Danville CA and by certified mail to the same address.

2B. At the time of service, 3100 Finley Road was listed by Google's Maps as the "Thomas Estate." A Caucasian male over the age of 18 years old was present at the residence at the time of service and the summons and other papers were placed on the dining table within the residence. Pictures were taken and will be produced at the hearing. Defendant Thomas is the registered agent for service for Defendants Amerimade and Uptime. The following information is provided at the CA Secretary of State website in October 2015.

| Entity Name: | AMERIMADE TECHNOLOGY, INC. |
|---|---|
| Entity Number: | C1881895 |
| Date Filed: | 01/20/1994 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 449 MOUNTAIN VISTA PKWY |
| Entity City, State, Zip: | LIVERMORE CA 94551 |
| Agent for Service of Process: | TODD THOMAS |
| Agent Address: | 449 MOUNTAIN VISTA PKWY |
| Agent City, State, Zip: | LIVERMORE CA 94551 |

| Entity Name: | AMERIMADE TECHNOLOGY INC. |
|---|---|
| Entity Number: | C3666974 |
| Date Filed: | 04/16/2014 |
| Status: | DISSOLVED |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 733 ANN GABRIEL LN |
| Entity City, State, Zip: | TRACY CA 95377 |
| Agent for Service of Process: | LEGALZOOM.COM, INC. |
| Agent Address: | 100 WEST BROADWAY SUITE 100 |
| Agent City, State, Zip: | GLENDALE CA 91210 |

APPLICATION FOR DEFAULT JUDGMENT BY COURT

| | |
|---|---|
| Entity Name: | UPTIME SEMICONDUCTOR EQUIPMENT SERVICE, INC. |
| Entity Number: | C1940299 |
| Date Filed: | 05/18/1995 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 449 MOUNTAIN VISTA PKWY |
| Entity City, State, Zip: | LIVERMORE CA 94550 |
| Agent for Service of Process: | TODD THOMAS |
| Agent Address: | 449 MOUNTAIN VISTA PKWY |
| Agent City, State, Zip: | LIVERMORE CA 94550 |

2C. In Paragraph 13 of the Amended Complaint, it is alleged that Defendant Thomas is the "alter ego" of Defendants Amerimade and Uptime. At all times during the events recited in the Amended Complaint, Defendants Amerimade and Uptime were listed as "suspended" or "dissolved" by the CA Secretary of State website.

As further proof of the lapse in corporate status, a disgruntled service technician of Defendant Amerimade who had not been paid for services rendered, incorporated Defendant Amerimade's name through Legal Zoom in 2013 (second record above). Defendant Thomas was able to recover Defendant Amerimade's name in 2014 only by paying the former employee who then voluntarily dissolved his corporation.

2D. Defendant Amerimade is a defendant in at least 13 lawsuits filed over the past few years in the Superior Courts for the Counties of Alameda, Santa Clara, San Mateo, and Santa Cruz. Several of the judgments were entered by default.

3. Plaintiff has had no contact with Defendants or their counsel since the filing and service of this action.

4. Plaintiff is entitled to judgment against said defendants on account of the claims in the complaint further supported by the accompanying Gens Declaration, to wit:

4A. In the Amended Complaint's first cause of action and specifically in Paragraphs 10 and 11, Defendants are alleged to have incorporated the patented technology in a piece of

- 3 -

semiconductor processing equipment commonly known as a Dryer which was sold to Defendants' customer SRI International. The SRI Dryer is known to contain VAM components. According to Paragraph 8 (c) (c) of the terminated 2011 Mutual Confidentiality, Nondisclosure and Licensing Agreement (the "License") referred to in the Amended Complaint and attached hereto as Exhibit A, a royalty of $40,000 should have been paid by Defendants. This reasonable royalty is found in section of the License.

The Amended Complaint prays in Paragraph 4 for treble damages and prejudgment interest. Treble damages of the reasonable royalty is $120,000. The prejudgment interest is measured from the date of the shipment of the infringing Dryer to the customer SRI which was July 2013. From July 2013 to November 2015 is a total of 28 months.

As prayed for in paragraphs 1 through 4 in the Amended Complaint, Plaintiff seeks a judgment of infringement of the '863 Patent that is willful and deliberate with the award of treble damages of $120,000.00 and prejudgment interest for 28 months.

4B. In the Amended Complaint's second cause of action is for misappropriation of trade secrets. As prayed for in paragraph 6 of the Amended Complaint Plaintiff requests an order enjoining Defendants from further acts of infringement and the return of all confidential information.

4C. The Amended Complaint's third cause of action is for conversion. As part of the confidential information delivered to Defendants were actual working VAM components so that Defendants could see how to manufacture their own VAM components by viewing not only the engineering drawings, but also actual working models. Instead Defendants' used the models in the Dryer delivered to SRI. The manufacturing cost of each of these VAM components is $1200 with a retail markup of 100% for a total of $2400 each and a grand total of $4800.00 for both VAM components.

4D. As prayed for in paragraph 5 of the Amended Complaint, Plaintiff seeks an award fo its expenses, costs, and attorney fees. Plaintiff's costs for the filing fees of this action of $ 400.00 and service of process of $200.00. Attorney's fees of $4000.00 for 40 hours at $100 per hour.

The above stated facts are set forth in the accompanying declaration filed herewith.

Dated: October 10, 2015

*Timothy H Gens*

_____
Timothy Gens

CERTIFICATE AND PROOF OF SERVICE BY MAIL

I am a citizen of the United States and reside in Santa Clara County, California. I am over the age of eighteen years and not a party to the within entitled action. On October 10, 2015 I caused the following document(s)

**MEMORANDUM IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT**

**DECLARATION SUPPORTING MEMORANDUM IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT**

to be sent by mail postage prepaid addressed to:

Clerk of the Northern District of California 16th Floor
Phillip Burton Federal Building & United States Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Mr. Todd Thomas
Amerimade Technology Inc.
Uptime Semiconductor Inc.
3100 Finley Road
Danville, CA 94506

that same day. I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on October 10, 2009.

*Julia Gens*

_____
Julia Gens

# EXHIBIT A

## MUTUAL CONFIDENTIALITY, NONDISCLOSURE AND LICENSING AGREEMENT

THIS AGREEMENT is made on March 17, 2011 between Timothy Gens and ChemAcoustic Technologies, Inc., 774 Mays Blvd. Suite 10-5-6, Incline Village, NV 89452, a Nevada corporation ("ChemAcoustic") and Amerimade Technology Inc. of 449 Mountain Vista Parkway, Livermore, CA, 94551("Amerimade"). ChemAcoustic and Amerimade may be referred to herein individually as a "Party" and collectively as the "Parties".

1.  Purpose. ChemAcoustics and Amerimade wish to explore a business possibility of mutual interest between ChemAcoustics and Amerimade, and the Parties desires to exchange each other's Confidential Information for the purposes of licensing, manufacturing, selling, supporting and/or purchasing kits and/or complete systems which incorporate ChemAcoustics' aerosol drying technology into Amerimade's product offering. This Agreement is specifically and exclusively pertains to ChemAcoustic's aerosol drying technology, and has no impact on other drying technologies which utilize alcohol in the process.

2.  Definition. "Confidential Information" means any information, technical data, or know-how considered proprietary or confidential by the Parties including, but not limited to, specifications, designs, drawings, diagrams, engineering, marketing, techniques, mask works, documentation, customer information, pricing information, procedures, data, concepts, business and marketing plans or strategies, financial information and employee files which is marked as Confidential and disclosed by one Party to the other Party either directly or indirectly in any form whatsoever, including in writing, orally, machine readable form or by drawings or inspection of parts or equipment or access to the other Party's premises, provided if disclosed orally or by access to premises, is identified at the time as Confidential and confirmed as such in writing within thirty (30) days of the disclosure.

3.  Exclusions. Confidential Information does not include information, technical data or know-how which (i) is in one Party's possession at the time of disclosure as shown by that Party's files and records immediately prior to the time of disclosure; (ii) before or after it has been disclosed to one Party, becomes part of the public knowledge or literature, not as a result of any action or inaction of that Party; (iii) is approved for release by written authorization of the other Party; (iv) is provided to other parties by authorized employees of one Party without a duty of confidentiality; (v) is contained in any public domain publication, patent or published application for patent through no wrongful act of the receiving Party; (vi) is received by one Party from a third party who has the right to disclose without restrictions and through no wrongful act of the receiving Party or (vii) is independently developed by one Party without the assistance of employees or consultants of, or contractors to, that Party who has access to the Confidential Information.

4.  Use Limitations. The Parties agree not to use the Confidential Information for any purposes except those purposes set forth above. The Parties shall not use the Confidential Information for purpose of unfair competition. Under this Agreement, ChemAcoustics grants Amerimade the rights to copy, alter, modify, disassemble, reverse engineer and/or decompile the

Confidential Information of ChemAcoustics relating to their aerosol drying technology specifically for the purposes described herein, and in consideration of receipt of a licensing fee to be paid by Amerimade to ChemAcoustics upon the sale and shipment by Amerimade of products which utilize this technology.

5. Non-Disclosure. The Parties agrees not to disclose Confidential Information to any third parties or to any of its employees except those employees who have a need to know the Confidential Information for accomplishing the stated purposes described herein and where such employees shall be made aware of that the information is confidential and shall be under a contractual restriction on nondisclosure and proper treatment of confidential information. The Parties agrees that they shall protect the confidentiality of and take all steps that are reasonably necessary to protect the secrecy of the Confidential Information and prevent it from entering the public domain or falling into the hands of others not bound by this Agreement or pledged to their secrecy without limitation. At a minimum the steps shall include where practical: (i) segregating the areas of a Party's factory, laboratory, office or other facilities where oe Party utilizes or otherwise reviews the proprietary information to prevent unauthorized personnel from acquiring significant information about the proprietary information; (ii) restricting access to the Party's factory, laboratory, or other facilities to the technical personnel who are pledged to secrecy and are required to know the methods for the utilization of the proprietary information and use them for the purposes of the Agreement and the supervisory, executive, or other personnel who have signed a confidential agreement to secrecy and are required to have access to these areas in the performance of their duties; and (iii) numbering all copies of all photographs, descriptions, or representations for which a Party's prior permission has been granted; maintaining a record of the persons entrusted with the custody of these copies; and, to the extent practicable, maintaining all copies in safes or other locked containers when not in actual use. In no event shall a Party use less than the same degree of care that Party uses to protect its own Confidential Information. Each Party agrees to immediately advise the other Party in writing of any misappropriation or misuse by any person of such Confidential Information of which that Party may become aware. In any event, the requirements of this paragraph shall not be more restrictive as regards access to Confidential Information than is available by third partyies not operating under similar agreement with the owner of said Confidential Information.

6. Return of Materials. Any Confidential Information of either Party which is furnished to the other Party, and all copies thereof, at the earlier of the first Party's' request for return of the materials, or the termination of the business relationship between the the Parties, at the the first Party's option, will either be (i) promptly returned to that Party; or (ii) destroyed by the other Party (with the other Party providing written certification of such destruction).

7 Termination. Either Party hereto may terminate this Agreement upon thirty (30) days written notice to the other Party; however, the obligations under this Agreement shall remain in effect for five (5) years from the date of the Termination.

8. License; Inventions. Each Party's Confidential Information and all intellectual property rights relating thereto shall remain the sole property of that Party. ChemAcoustics grants a non-exclusive license under this Agreement to Amerimade which allows them to utilize

2

ChemAcoustics patents, copyrights, mask work rights and other proprietary rights by the disclosure of pertinent Confidential Information hereunder. The non-exclusive license which ChemAcoustics grants to Amerimade shall be controlled by the following terms:
   a) ChemAcoustics agrees to provide Amerimade with necessary technical assistance as Amerimade utilizes ChemAcoustics' Confidential Information for the purpose of designing, engineering, manufacturing, demonstrating, selling, operating and supporting drying systems that are based on the ChemAcoustics' aerosol drying process/system
   b) ChemAcoustics and Amerimade agree that ChemAcoustics' Venturi Aerosol Maker ("VAM") is key to ChemAcoustics' technology, and agree that Amerimade may purchase this device from ChemAcoustics for integration into the final products that Amerimade will build, and at a transaction price of $X, or they may manufacture VAMs for their own use.
   c) Amerimade agrees to pay ChemAcoustics a licence fee for each product which they sell to a third party. Amerimade will manufacture the VAM. The license fee shall be as follows:
      a. $20,000 per VAM in a product.with a particle cleaniless specification guarantee of 200 nm or less;;
      b. : $30,000 per VAM in a product with a particle specification gurantee of 160 nm or less;
      c. $40,000 per VAM in a product with a particle cleanliness specification gurantee of 120nm or less;
      d. Exceptions to the above license fee schedule may be granted by ChemAcoustic to keep the retail price of the product competitive. For example, a dryer capable simultaneously drying two cassettes each containing 25 8-inch wafers may contain a second VAM to speed process time while Amerimade will only be responsible for the payment of the license for said dryer as though it contained only one VAM, namely $20,000.
   d) License fee payment is to be remitted by Amerimade to ChemAcoustics within 45 days of the product's shipment to the third party ("Customer"), and shall include the name and address of the Customer's company which shall be considered Amerimade Confidential Information.

9.    Remedies. Each Party understands and agrees that the other Party is providing Confidential Information in reliance upon the Parties agreement contained herein, and each Party will be fully responsible to the other Party for any damages or harm caused to the the other Party by a breach of this Agreement. Each Party agrees that the other Party shall be entitled to equitable relief, including, injunction and specific performance, in the event of any breach or threatened breach or intended breach of this Agreement the first Party. Such remedies, however, shall not be deemed to be the exclusive remedies for any breach of the Agreement but shall be in addition to all other remedies available in law or in equity.

10. <u>Attorney's Fees; Jurisdiction/Venue</u>. In the event of any litigation, arbitration or other legal proceedings between the parties, the prevailing party shall be entitled to reasonable attorney's fees and all costs of proceedings incurred in enforcing this Agreement. The parties agree that all litigation, arbitration or other legal proceedings under this Agreement shall be brought in the state courts of the County of Santa Clara, California and the United States District Court for the Northern District of California, San Jose Division. The validity, interpretation and performance of this Agreement shall be governed by the laws of the State of California, excluding its conflict of law rules.

11. <u>General</u>. This Agreement sets forth the entire understanding and agreement of the parties with respect to the subject matter hereof and supersedes all other oral or written representations and understandings. This Agreement may be amended or modified only in writing signed on behalf of Amerimade and an authorized representative of the ChemAcoustics. This Agreement shall not be construed as a teaming agreement, joint venture or other business relationship. This Agreement shall be binding upon the successors of both parties.

The undersigned warrant and represent that they have the authority to enter into this Agreement on behalf of the person, entity or corporation listed above their name.

| Timothy Gens & ChemAcoustic Technologies, Inc. (ChemAcoustics) | Amerimade Technology Inc. (Amerimade) |
|---|---|
| By: _[signature: Timothy H. Gens]_ | By: _____ |
| Title: __Individually & as President__ | Title: _____ |

4